NOT DESIGNATED FOR PUBLICATION

No. 128,090

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ARCHIE L. ROBINSON,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Douglas District Court; MARK A. SIMPSON, judge. Submitted without oral argument. Opinion filed July 24, 2026. Affirmed.

*Jessica R. Kunen*, of Lawrence, for appellant.

*Adam Carey*, senior assistant district attorney, *Dakota Loomis*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before PICKERING, P.J., ISHERWOOD, J., and ANDREW M. STEIN, District Judge, assigned.

PER CURIAM: Archie L. Robinson appeals from the district court's denial of his K.S.A. 60-1507 motion, claiming both his trial counsel and his appellate counsel were ineffective. Robinson also claims the district court erred when it denied his amended motion by finding his newly asserted claims did not relate back to his original K.S.A. 60-1507 motion. After careful review, we find neither trial counsel nor appellate counsel were ineffective, and we find no abuse of discretion by the district court's denial of Robinson's amended motion. Thus, we affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

In Robinson's direct appeal, the Kansas Supreme Court summarized the facts as follows:

"In the early morning hours of March 8, 2014, Cousins Dustin Walker and Archie Robinson broke into Marilyn Howard's residence, where she lived with two sons and a grandson. One of her sons, Patrick Roberts, sold marijuana from his bedroom, and the cousins went directly to his room once inside the residence. According to the testimony of the surviving residents, one of the cousins demanded, 'Where is it?' Roberts responded, 'I don't know what you are talking about.' One of the cousins then shot Roberts, who died from his wounds. Roberts' brother struggled with the shooter before the gun went off a second time. Evidence at trial pointed to Walker as the shooter.

"During the altercation, Howard called 911. The first law enforcement officer arrived at the apartment a little after 3 a.m., by which time both Robinson and his cousin had fled. Roberts' brother and son told the officer the shooter wore a black shirt and the second man wore light clothes. Shortly after, officers began searching the area and found Walker and Robinson, who had separated, Walker wore a black jacket and jeans, and Robinson wore a cream-colored shirt and khaki pants.

"Additional evidence introduced at trial implicated Robinson and Walker. Surveillance video from a nearby gas station showed the two men around 2:45 a.m., minutes before the shooting. Both men wore the same clothes at the time of their arrests. Stains on Robinson's pants and shirt matched Roberts' blood. Robinson was not wearing shoes when arrested, but officers found a size 9 shoe at the crime scene that did not belong to the residents. An officer found a matching shoe, stained with blood that matched Roberts', on the grounds of a nearby apartment complex. Robinson requested size 9 jail footwear during his police interview. The gun, which the intruders left at the scene, belonged to the mother of Walker's children. Finally, at trial, the mother of Robinson's children testified she asked Robinson why he did it and he said he 'was being greedy and he said he fucked up.'

"The jury convicted Robinson of both charges—aggravated burglary and felony murder. The court sentenced Robinson to a controlling hard 20 life sentence." *State v. Robinson*, 308 Kan. 402, 403-04, 421 P.3d 713 (2018).

On direct appeal, Robinson raised three issues:  (1) The State's information accused him of being the shooter, and the evidence did not prove he shot the victim; (2) the felony murder instruction was overly broad because it instructed the jury that he or "another" killed the victim; and (3) the felony-murder instruction was factually inappropriate. The Supreme Court affirmed, finding that sufficient evidence supported Robinson's conviction; the words "'the defendant or another'" did not overly broaden the crime and was legally appropriate; and the instruction was factually inappropriate but was harmless error. *Robinson*, 308 Kan. at 406-08.

On July 3, 2019, Robinson timely filed a pro se K.S.A. 60-1507 motion alleging: (1) No evidence supported an unauthorized entry; (2) trial counsel performed deficiently when he failed to investigate the victim's character for being a drug dealer with an "open door" policy; (3) the trial court prevented Robinson from arguing his theory of defense that the victim authorized the entry; and (4) trial counsel performed deficiently when counsel did not request a circumstantial evidence instruction.

Nearly three years passed with no activity. In March 2022, the district court asked the State to respond to Robinson's motion. On May 5, 2022, the State moved to summarily deny Robinson's K.S.A. 60-1507 motion. The district court appointed counsel for Robinson on May 27, 2022. Robinson filed two requests for extensions to respond to the State on January 23, 2023, and February 21, 2023. The district court granted both extensions.

On March 10, 2023, Robinson filed a memorandum in support of his pro se K.S.A. 60-1507 motion alleging:  (1) Appellate counsel performed deficiently when she

conceded Robinson's guilt on felony murder and aggravated burglary; (2) the prosecutor made improper comments on Robinson's credibility; (3) the prosecutor "created an imaginary script" of the victim's thoughts before death; and (4) the prosecutor made improper comments on the expert witness's credibility. In response, the State filed a supplemental legal memorandum, arguing that Robinson's new claims were time barred, did not relate back, and did not show manifest injustice to amend his petition. Robinson filed a response to the State, arguing that the new claims related back and that the district court's failure to appoint counsel until three years after he filed the pro se motion was a manifest injustice.

The district court treated Robinson's memorandum in support as a motion to amend because he alleged new claims that were not included in his pro se motion. The district court denied Robinson's newly asserted arguments, specifically the issues regarding appellate counsel's performance; the trial court preventing him from presenting his theory of defense that the firearm discharged accidentally; and any argument about the prosecutor's closing statements. It found that Robinson's claims about appellate counsel did not relate back because his original motion only made claims about trial counsel.

As for the claim that Robinson was prohibited from presenting his theory of defense, the district court found that the amended motion alleged a different theory of defense—the accidental discharge of the firearm—that was not alleged in his timely filed K.S.A. 60-1507 motion. His timely filed motion alleged the trial court prevented him from presenting his theory of defense—that the victim consented to his entry. Because his new claim asserted a different ground, the district court found that it did not relate back.

The district court found that the arguments about the prosecutor's closing statements did not relate back to Robinson's pro se motion because the motion did not make any arguments regarding closing arguments. It also found that Robinson could not

4

establish manifest injustice because he was not entitled to counsel before the court found that the motion presented substantial questions of law; K.S.A. 60-1507 does not suggest that a district court should appoint counsel before the expiration of the time limit; and K.S.A. 60-1507 does not provide a mechanism to extend the time limit for motions filed near the end of the time limit.

The district court held an evidentiary hearing on the other issues in April 2024. At the hearing, Robinson asked the district court to reconsider its denial of his motion to amend or allow both parties to proffer their arguments to establish a record for the court of appeals. The district court allowed the parties to proffer but did not reconsider its previous ruling because Robinson did not file a written motion.

First, Robinson called appellate counsel, who testified to challenging issues related to the charging documents. She explained that she did not challenge the burglary conviction because she "didn't see anything to challenge about that conviction." Robinson asked appellate counsel if she thought the prosecutor erred when the prosecutor made statements about Robinson's theory of defense. But appellate counsel could not recall the prosecutor's statements.

Robinson read to appellate counsel this statement from the prosecutor's closing argument: "'[I]n terms—in terms of defense expert—you know, be aware of an expert witness, especially in the field of forensic and science, who talks in absolutes.'" Appellate counsel stated:

> "I—I would want to see the context of the rest of the closing argument, probably, rather than just those couple of sentences. But again, as you've read it to me, I think you could definitely make an argument that that's error."

When asked about why appellate counsel did not make an argument that the prosecutor's statements created an "imaginary script," appellate counsel said:

"The reason I think it's close to the line is, the prosecutors can draw reasonable inferences from the evidence, right.

"So I think—you know, the part of it—saying that someone that has drugs wants to keep them, that seems like a reasonable inference from the evidence to me, probably.

"There are other parts of that that may not be so, so I think—I think it's probably a close call there."

In closing at trial, the prosecutor stated:

"And so what does the defendant say. He maintains that entire time that all of this blood on his clothes is old. It's been there for months. He goes to the clubs like that. He doesn't have the money to wash them. It really isn't a very credible statement to [the police]."

Appellate counsel did not challenge this statement because she thought "a prosecutor isn't allowed to vouch for a witness' credibility, but [she thought] that the prosecutor can say what the police thought of the witness' credibility."

On cross-examination, the State asked appellate counsel if she could describe the standard of review for a sufficiency of the evidence claim. Appellate counsel stated, "If viewing the evidence in the light most favorable to the State there is basically any evidence that the elements of the crime all happened, then the appellate court will not reverse it." And appellate counsel explained that she did not raise the sufficiency of the evidence claim because "the little boy that was there, that lived at the apartment— testified that there was knocking at the door and then somebody kicked the door in. And that, by itself, probably would've defeated any kind of sufficiency issue."

6

Next, Robinson called trial counsel. Trial counsel testified that his theory of the case was:

"Based on what I recall from the case—granted, it's been eight, nine years now—I remember the—the deceased had been dealing drugs. And the brother, who was—I don't know, in his 20's, I think—and then there was a teenage brother living in the house, and then the mom. I think the mom was at work at the time.

"But he said that two guys had gone in—kicked the door in—gone in and then the older brother was asleep in his room and heard something. And he was kind of going down the hall, sneaking up.

"And I wanted to argue that—you know, basically, he grabbed one of the individuals with the gun that was not Mr. Robinson, allegedly, and that the gun accidentally went off.

"That was essentially what I wanted to argue and then got kind of shot down when I tried to do that in closing."

Trial counsel presented a ballistics expert to support his theory. He also investigated whether the entry was authorized or unauthorized. His investigation found that "there was the—the shoe print on the door. That was big. And then the—the latch. And the—you know, the inside door frame that looked like it had been, like, forcibly, like—maybe kicked open." Trial counsel sent an investigator to the apartment building, but the apartment building did not have maintenance records.

Trial counsel explained that he did not investigate the victim's character because the victim's brother testified to the victim's drug dealing and "it didn't seem to be really disputed that he was dealing drugs out of the apartment." Trial counsel also had the investigator interview neighbors, who said "that they would see people come and go, but it wasn't anything unusual." When asked whether the neighbors or any witness told the

investigator "that people would just walk into the apartment[,]" trial counsel said, "I mean—they would just, like, not knock on the door and go in? I don't recall that ever being said." Trial counsel did not ask for a circumstantial evidence instruction because "a circumstantial evidence instruction's really not even a thing. It hasn't been since, you know, the 70's or 80's."

On cross-examination, the State asked trial counsel if he had any reason to believe that Robinson was authorized to enter the apartment. Trial counsel stated:

"So the physical evidence that we had was that the shoe print was on the door, indicating that it was opened with a foot. There was a shoe left behind that turned out to be Mr. Robinson's. There was the issue with the door latch that—you know, we maybe could have—

"I mean, the apartment was in bad shape in general. And that's why we tried to go get maintenance records and things—to see."

On recross-examination, trial counsel explained that he did not object to the prosecutor's statements at closing because he thought those were inferences the prosecutor could draw from the evidence.

The district court found that appellate counsel was not deficient because witness testimony stated that the door was kicked in, so a sufficiency of the evidence claim would not have prevailed. And the district court found compelling that, on direct appeal, the Supreme Court stated: "The trial record provides sufficient evidence that Robinson committed felony murder—that is, he participated in the crime of an aggravated burglary during which Roberts was killed." *Robinson*, 308 Kan. at 406.

The district court denied Robinson's motion to reconsider whether his amended motion related back to his original K.S.A. 60-1507 motion. The district court found that

8

trial counsel "was not deficient because he did investigate the victim's drug dealing, that drug dealing was made known to the jury, and the investigation did not reveal any evidence that drug buyers were allowed to walk directly into the apartment without being let in by a resident." On the last issue, the district court found trial counsel was correct that, under *State v. Wilkins*, 215 Kan. 145, 156, 523 P.2d 728 (1974), a circumstantial evidence instruction was unnecessary because a reasonable doubt instruction was given.

Robinson appealed.

ANALYSIS

I.      *The District Court Did Not Err When It Denied Robinson's Pro Se Claims*

*Standard of Review and the Rules We Follow*

After a full evidentiary hearing on a K.S.A. 60-1507 motion, the district court must issue findings of fact and conclusions of law concerning all issues presented. Supreme Court Rule 183(j) (2026 Kan. S. Ct. R. at 242). An appellate court reviews the court's findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. Appellate review of the district court's ultimate conclusions of law is de novo. *State v. Peters*, 319 Kan. 492, 499, 555 P.3d 1134 (2024).

Here, the district court conducted an evidentiary hearing on three issues: (1) whether appellate counsel was deficient for failing to raise a sufficiency of the evidence claim; (2) whether trial counsel performed deficiently when counsel did not investigate the victim's character; and (3) whether trial counsel failed to instruct the jury on circumstantial evidence.

9

"Claims of ineffective assistance of trial counsel are analyzed under the two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed 2d 674 (1984), and adopted by the Kansas Supreme Court in *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985). Under the first prong, the defendant must show that defense counsel's performance was deficient. If successful, the court moves to the second prong and determines whether there is a reasonable probability that, absent defense counsel's unprofessional errors, the result would have been different.

"To establish deficient performance under the first prong, the defendant must show that defense counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel must be highly deferential. A fair assessment of counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, reconstruct the circumstances surrounding the challenged conduct, and evaluate the conduct from counsel's perspective at the time. A court considering a claim of ineffective assistance of counsel must strongly presume that defense counsel's conduct fell within the wide range of reasonable professional assistance; that is, the defendant must overcome the strong presumption that, under the circumstances, counsel's action might be considered sound trial strategy.

"Under the second prong, the defendant must show that defense counsel's deficient performance was prejudicial. To establish prejudice, the defendant must show with reasonable probability that the deficient performance affected the outcome of the proceedings, based on the totality of the evidence. A court hearing a claim of ineffective assistance of counsel must consider the totality of the evidence before the judge or jury. A reasonable probability is a probability sufficient to undermine confidence in the outcome. [Citations omitted.]" *State v. James*, 319 Kan. 178, 184-85, 553 P.3d 308 (2024).

As a preliminary matter, Robinson argues counsel performed deficiently but fails to make any argument for prejudice. An issue not briefed is deemed waived or abandoned. *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021). Because Robinson fails to show prejudice, he has not met his burden under *Strickland v. Washington*, 466

U.S. 668, 104 S. Ct. 2052, 80 L. Ed 2d 674 (1984). See *Edgar v. State*, 294 Kan. 828, 843, 283 P.3d 152 (2012) (claims of ineffective assistance can be disposed of solely on the prejudice prong if a defendant fails to establish prejudice). Nonetheless, a review of the merits proceeds as follows.

    A.    *Robinson may raise the sufficiency of the evidence claim as a claim of ineffective assistance of appellate counsel, not as a general sufficiency of the evidence argument.*

The State argues that Robinson should have brought a sufficiency of the evidence claim on direct appeal. The State is correct that under Supreme Court Rule 183(c)(3), a K.S.A. 60-1507 motion cannot "be used as a substitute for direct appeal involving mere trial errors or as a substitute for a second appeal." 2026 Kan. S. Ct. R. at 241. On direct appeal, Robinson could have brought a sufficiency of the evidence claim.

The district court construed Robinson's argument as an ineffective assistance claim of appellate counsel, and we do the same.

A movant cannot use a K.S.A. 60-1507 motion as:

> "a vehicle to raise an issue that should have been raised on direct appeal, unless the movant demonstrates exceptional circumstances excusing earlier failure to bring the issue before the court. Exceptional circumstances have been defined as 'unusual events or intervening changes in the law.' Ineffective assistance of counsel can qualify as an exceptional circumstance. [Citations omitted.]" *Rowland v. State*, 289 Kan. 1076, 1087, 219 P.3d 1212 (2009).

Here, the district court correctly found that Robinson connected the sufficiency of the evidence claim and ineffective assistance of counsel claim to show exceptional circumstances. The district court also properly found that the arguments about Robinson's

11

theory of defense were barred because they could have been raised on direct appeal and he failed to connect them to an ineffective assistance of counsel claim.

On appeal, Robinson again fails to connect the theory of defense claim to an ineffective assistance of counsel claim. Therefore, Robinson has not established exceptional circumstances, and this issue is barred.

B.    *Appellate counsel did not perform deficiently because she understood the standard of review and made a strategic decision.*

A review of the sufficiency of the evidence standard of review and whether the evidence was sufficient aids in analyzing appellate counsel's performance.

> "When a defendant challenges the sufficiency of the evidence, we review the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. We do not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses." *State v. Mendez*, 319 Kan. 718, 723, 559 P.3d 792 (2024).

Robinson claims that the State could not prove the unauthorized entry element of burglary when the victim's "open door policy for drug buyers" authorized Robinson's entry. He alleges that appellate counsel performed deficiently when appellate counsel conceded the State presented sufficient evidence of the unauthorized entry. He also argues that trial counsel performed deficiently because trial counsel failed to investigate and present evidence on whether the entry into the apartment was forced.

The State contends appellate counsel did not perform deficiently because the State presented sufficient evidence. And the State argues trial counsel performed effectively because he thoroughly investigated the facts but the investigation "did not result in beneficial evidence for Robinson."

12

The district court correctly found that "a witness testified that the door was kicked in and that would have defeated the sufficiency of the evidence claim related to unauthorized entry." Trial counsel presented to the jury the victim's drug dealing, but the evidence indicated a forced entry with the door being kicked in. When viewing this evidence in the light most favorable to the State, the evidence supported that the entry was forced.

Appellate counsel's "failure to raise an issue on direct appeal is not per se ineffective assistance. 'Conscientious counsel should only raise issues on appeal which, in the exercise of reasonable professional judgment, have merit.' [Citation omitted]." *Miller v. State*, 298 Kan. 921, 932, 318 P.3d 155 (2014). Here, appellate counsel did not raise the sufficiency of the evidence issue because, in her reasonable professional judgment, the issue did not have merit. The issue did not have merit because there was testimony of forced entry and no evidence showed the victim authorized Robinson's entry. Appellate counsel did not perform deficiently.

C.   *Trial counsel investigated and presented evidence of the victim's drug dealing.*

Robinson claims that trial counsel failed to investigate if he entered forcibly or if the damage to the door was inflicted earlier. But trial counsel testified to investigating the entry into the apartment. He testified that the investigator "discovered that ownership had changed of that apartment complex, and the previous owners, like, left nothing behind. There were no maintenance records. There was nothing that we could get." Trial counsel did not fail to investigate; he investigated, but there was no evidence.

"'Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable, and strategic choices made after less than a complete investigation are reasonable precisely to the extent that reasonable

13

professional judgments support the limitations on investigation.'" *State v. Betancourt*, 301 Kan. 282, 311, 342 P.3d 916 (2015). Here, trial counsel made a strategic choice after a thorough investigation of the law and facts. Trial counsel presented evidence of the victim's drug dealing and hired an investigator, who investigated if Robinson entered the apartment forcibly. The investigator questioned the neighbors about the drug dealing but did not find any evidence of forced entry, and the neighbors did not tell the investigator that drug buyers entered the apartment without permission to purchase drugs.

The district court found: "[Trial counsel] did not have any evidence from the investigation to show that people walked directly into the apartment to buy marijuana. This made it impossible for [trial counsel] to present any such evidence." The district court found that "the investigation did not reveal any evidence that drug buyers were allowed to walk directly into the apartment without" a resident's consent, and trial counsel presented the victim's drug dealing to the jury. It was undisputed that the victim dealt drugs. Substantial competent evidence supported the district court's finding that trial counsel was not deficient.

D. *Trial counsel did not perform deficiently when he did not request a circumstantial evidence instruction.*

Robinson alleges that trial counsel was ineffective for failing to request a circumstantial evidence instruction.

The State argues that, under *Wilkins*, circumstantial evidence instructions are no longer required if a proper reasonable doubt instruction is given. See 215 Kan. at 156.

The district court correctly found that trial counsel did not have to ask for a circumstantial evidence instruction because a reasonable doubt instruction was given at trial. In *Wilkins*, the Supreme Court held: "[A]n instruction on circumstantial evidence

14

. . . is unnecessary when a proper instruction on 'reasonable doubt' is given . . . ." 215 Kan. at 156. Trial counsel did not perform deficiently when he did not request a circumstantial evidence instruction because a reasonable doubt instruction was given.

II.     *The District Court Did Not Err When It Found Robinson's Amended Motion Did Not Relate Back to His Original Motion*

*Standard of Review and the Rules We Follow*

A defendant has one year from when a conviction becomes final to file a K.S.A. 60-1507 motion. K.S.A. 60-1507(f)(1). The one-year time limitation for bringing an action under K.S.A. 60-1507(f)(1) "may be extended by the court only to prevent a manifest injustice." K.S.A. 60-1507(f)(2). "'[A] defendant who files a motion under K.S.A. 60-1507 outside the 1-year time limitation in K.S.A. 60-1507(f) and fails to assert manifest injustice is procedurally barred from maintaining the action.'" *State v. Roberts*, 310 Kan. 5, 13, 444 P.3d 982 (2019).

Generally, K.S.A. 60-1507 movants have no right to amend their original motion, but they may do so if the district court in its discretion allows them to do so. See *Thompson v. State*, 293 Kan. 704, 709, 270 P.3d 1089 (2011). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Younger*, 320 Kan. 98, 137-38, 564 P.3d 744 (2025). The district court's legal conclusions are reviewed de novo. *Thompson*, 293 Kan. at 709.

> "If an amendment to a K.S.A. 60-1507 motion *is permitted*, the timeliness of amended claims is subject to the *Pabst* [*v. State*, 287 Kan. 1, 192 P.3d 630 (2008)] time and type test enunciated in K.S.A 60-215(c), i.e., relation back is permitted only if the new claims arose 'out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.'" (Emphasis added.) *Thompson*, 293 Kan. at 714.

15

"An amendment to a motion for relief under K.S.A. 60-1507 that asserts a new ground for relief which is supported by facts that differ in both time and type from those grounds set forth in the original motion does not relate back to the date of the original motion, so as to circumvent the 1-year limitation of K.S.A. 60-1507(f)(1)." *Pabst v. State*, 287 Kan. 1, Syl. ¶ 7, 192. P.3d 630 (2008).

*Discussion*

It is undisputed that Robinson's original pro se K.S.A. 60-1507 motion was timely filed. Robinson contends that the district court should have considered his amended K.S.A. 60-1507 motion because he filed his pro se motion on July 1, 2019, but the district court did not appoint counsel until May 27, 2022. He argues that the issues raised in the amended motion related back to his original K.S.A. 60-1507 motion. Robinson also argues that, because K.S.A. 60-1507 counsel "was not appointed in a timely manner," any response would be late.

The State alleges that the district court properly denied Robinson's amendment as neither relating back to his original petition nor establishing a manifest injustice.

Robinson asserts that his claims relate back to his claims in his original motion. Robinson recites the standard for relation back, then states, "The claims raised by post-conviction counsel beyond the one-year limitation related back to the original claims." He lists the newly asserted claims and proceeds to explain the merits of the newly asserted claims. However, Robinson cites no authority for why his claims relate back and does not explain why the new claims pass the time and type test. See *Pabst*, 287 Kan 1, Syl. ¶ 7. Issues not adequately briefed are deemed waived or abandoned. *Davis*, 313 Kan. at 248.

Robinson made three new claims in his amended K.S.A. 60-1507 motion:  (1) Appellate counsel was ineffective when she conceded Robinson's guilt on the aggravated burglary charge; (2) the trial court prevented him from presenting his theory of defense

16

that the gun discharged accidentally; and (3) in closing argument, the prosecutor made improper prejudicial statements that neither trial counsel nor appellate counsel challenged. Robinson alleged that the State made improper arguments on two separate grounds.

In *Pabst*, Pabst filed a K.S.A. 60-1507 motion in October 2003. Some time after March 1, 2005, Pabst filed an amended motion that included 10 new claims. The district court found that the new claims did not relate back and dismissed the new claims as time barred under K.S.A. 60-1507. On appeal, Pabst argued that his new claims all related to his trial counsel's conduct, so the new claims met the time and type requirement.

The *Pabst* court interpreted the 2007 version of Supreme Court Rule 183(e), which stated that "'[a] motion to vacate a sentence shall be deemed sufficient if in substantial compliance with the form' set forth by the Judicial Council. 2007 Kan. Ct. R. Annot. 244." *Pabst*, 287 Kan. at 25. The current Rule 183(e) states: "A motion to vacate, set aside, or correct a sentence is sufficient if it is in substantial compliance with the judicial council form." 2026 Kan. S. Ct. R. at 242. The court indicated there was "some merit in viewing an ineffectiveness claim as a unitary issue, notwithstanding the number of separate reasons advanced in support of the claim. However, our rule governing the sufficiency of a [K.S.A.] 60-1507 motion appears to require more specificity. [Citation omitted.]" *Pabst*, 287 Kan. at 25. The court interpreted Rule 183(e) and found that, "when a movant submits the form, he or she 'is presumed to have listed *all* of the grounds upon which he is relying.'" *Pabst*, 287 Kan. at 25.

The *Pabst* court stated, in dicta, that an ineffective assistance of counsel claim "could arguably be bootstrapped into an originally raised ground for relief." 287 Kan. at 26. But Robinson makes no argument about why his claims should be "bootstrapped" to his original claim, which solely argued trial counsel was ineffective for not investigating

17

or presenting evidence that the entry was authorized. Again, issues not adequately briefed are deemed waived or abandoned. *Davis*, 313 Kan. at 248.

In *Booker v. State*, No. 124,986, 2024 WL 1598334 (Kan. App. 2024) (unpublished opinion), *rev. denied* 320 Kan. 861 (2025), Booker timely filed a pro se K.S.A. 60-1507 motion alleging ineffective assistance of counsel and appellate counsel without precise factual representations. Booker filed around a dozen amendments to his motion. The district court appointed counsel, and counsel filed a motion to allow the amendments as relating back to the timely filed motion. The district court denied the amendments and the K.S.A. 60-1507 motion. On appeal, another panel of this court found that the relation back doctrine should be strictly applied because "[a] contrary rule would permit an individual to file a patently deficient 60-1507 motion—perhaps even one with no claims and only a promise to provide some later—at the last minute and then resuscitate it with amendments filed months or even years later." 2024 WL 1598334, at *3.

Here, the newly asserted claims are not made on the same grounds as the ineffective assistance of counsel claims in Robinson's original K.S.A. 60-1507 motion. Even though counsel was appointed a few years after Robinson's motion was filed, the amended claims are time barred.

Robinson argues that it would be a manifest injustice not to allow any newly asserted claims because the district court appointed counsel years after the timely filed K.S.A. 60-1507 motion and appointed counsel must be able to give effective assistance.

Robinson is correct that he is entitled to effective assistance from appointed K.S.A. 60-1507 counsel. But that right only attaches after the district court finds the original motion presents substantial questions of law or triable issues of fact and appoints counsel. See *Roberts*, 310 Kan. at 11-12. K.S.A. 60-1507 movants have no right to

amend; the district court must grant them leave to amend. See K.S.A. 60-1507(f)(2). And K.S.A. 60-1507 movants are presumed to have listed all grounds for relief when they submit the form. *Pabst*, 287 Kan. at 25.

The district court did not abuse its discretion when it denied Robinson's motion to amend his K.S.A. 60-1507 motion.

Affirmed.